UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
RITCHIE CAPITAL MANAGEMENT, L.L.C.,          :
RITCHIE CAPITAL MANAGEMENT, LTD.,            :
RITCHIE SPECIAL CREDIT INVESTMENTS, LTD.,    :
RHONE HOLDINGS II. LTD., YORKVILLE           :
INVESTMENTS I, LLC, and RITCHIE CAPITAL      :
STRUCTURE ARBITRAGE TRADING, LTD.,           :
                                             :
                    Plaintiffs,              :
                                             :
              -against-                      :          **OPINION AND ORDER**
                                             :
BMO HARRIS BANK, N.A., as successor to M&I   :          14 Civ. 1936 (ER)
MARSHALL & ILSLEY BANK,                      :
                                             :
                    Defendant.               :
------------------------------------------------------------------------x

Ramos, D.J.:

      Ritchie Capital Management, L.L.C., Ritchie Capital Management, Ltd., Ritchie Special

Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investments I, LLC, and Ritchie

Capital Structure Arbitrage Trading, Ltd. (collectively, "Plaintiffs") bring suit against BMO

Harris Bank, N.A. ("BMO Harris" or "Defendant"), as successor to M&I Marshall & Ilsley Bank

("M&I").  This action, which was originally filed in the Supreme Court of the State of New

York, New York County, involves allegations that M&I conspired with Thomas J. Petters

("Petters"), his company Petters Company, Inc. ("PCI"), and others to operate a Ponzi scheme of

which Plaintiffs were victims.  Plaintiffs allege three state law causes of action against BMO

Harris:  (1) aiding and abetting Petters' fraud; (2) fraud and misrepresentation; and (3) civil

conspiracy.  Defendant removed the action to this Court based on federal subject matter

jurisdiction under the Edge Act, 12 U.S.C. § 632, and 28 U.S.C. § 1334(b) as "related to"

proceedings pending in the United States Bankruptcy Court for the District of Minnesota.  Doc.

2.

Pending before the Court are Plaintiffs' motion to remand and Defendant's motion to transfer the action to the United States District Court for the District of Minnesota.  Doc. 21, 24, 25.  For the reasons set forth below, Plaintiffs' motion to remand is DENIED, and Defendant's motion to transfer is GRANTED.

## I.    Background

### A.  Factual Background

The following facts, drawn from the Complaint, are presumed true for the purposes of Plaintiffs' motion to remand.  *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." (citations omitted)).

This action stems from a $3 billion Ponzi scheme that Petters and his associates operated from the mid-1990s through the time of his arrest in 2008.  Compl. ¶¶ 1, 13.  In the course of this scheme, Petters and PCI promised lenders, including Plaintiffs, substantial profits from the sale of electronic goods, which did not actually exist, while recycling lenders' money to pay other lenders as Petters and his cohorts siphoned off tens of millions of dollars in criminal gains.  *Id.* ¶ 1.  According to the Complaint, M&I[1] facilitated this criminal conduct by allowing Petters to use its representatives and bank services; M&I had actual knowledge of the fraud and made representations to, and transacted with, certain plaintiffs in furtherance of the scheme.  *Id.* ¶¶ 2; 72.

Plaintiffs—four Cayman Islands companies and two Delaware limited liability companies—made a series of loans to Petters and Petters Group Worldwide, LLC ("PGW") in

---

[1] M&I was a Wisconsin banking corporation that maintained an office in Minnesota.  Compl. ¶ 10.  BMO Harris is a banking corporation headquartered in Chicago, Illinois.  *See* May 9, 2014 Conf. Tr. 24:10-11.

the aggregate amount of over $150 million.  *Id.* ¶ 3.  As relevant to the instant motions, in March 2008, two of the Cayman Islands entities—RCM Ltd. and Ritchie Special Credit Investments, Ltd.—lent $31 million to Petters and PCI to finance the purported purchase of 232,500 Sony Playstations that were subsequently supposed to have been sold by a company in which Petters had a substantial ownership interest to Costco.  *Id.* ¶ 4.  M&I participated in negotiations with Petters, RCM Ltd., and other third parties regarding the establishment of certain bank accounts at M&I for the purpose of depositing the payments from Costco generated from the sale of the Playstations.  *Id.* ¶ 5.

Plaintiffs further allege that in May 2008, M&I, PCI, and RCM Ltd. executed a deposit account control agreement[2] which specifically references RCM Ltd. and Ritchie Special Credit Investments, Ltd.'s agreement to provide financing for the purchase of the Playstations.  *Id.* ¶ 51. The purpose of the deposit account control agreement was to secure PCI's obligations to the two Cayman-based plaintiffs.  *Id.* ¶ 52.

### B.  Procedural Background

On February 4, 2014, Plaintiffs commenced this action in the Supreme Court of the State of New York, New York County.  On March 19, 2014, Defendant removed the action to this Court.  Doc. 2.  A pre-motion conference was held on May 9, 2014, and Plaintiffs' motion to remand was filed on June 2, 2014.  Doc. 21.  Defendant's motion to transfer the case to the United States District Court for the District of Minnesota was filed on July 10, 2014.  Doc. 25.

---

[2] In a deposit account control agreement, a debtor, a secured party, and a bank maintaining a deposit account agree that the bank will comply with instructions from the secured party regarding disposition of the account's funds without further consent of the debtor.  Such an agreement enables the secured party to obtain control over the deposit account, and its security interest in the account to be perfected.  *See, e.g.*, *In re J. Silver Clothing*, 453 B.R. 518, 532 n.6 (Bankr. D. Del. 2011).

### C.  Other Proceedings

The United States Bankruptcy Court for the District of Minnesota is well-acquainted with

the fraud for which Petters has been convicted.  Between October 2008 and June 2009, several

Petters entities—PCI, PGW, Polaroid, and Petters Capital, LLC—filed for Chapter 11 protection

in that court.  *See In re Petters Co., Inc.*, No. 08-45257 (Bankr. D. Minn. Oct. 11, 2008); *In re

Petters Grp. Worldwide, LLC*, No. 08-45258 (Bankr. D. Minn. Oct. 11, 2008); *In re Polaroid

Corp.*, No. 08-46617 (Bankr. D. Minn. Dec. 18, 2008); *In re Petters Capital, LLC*, No. 09-43847

(Bankr. D. Minn. June 12, 2009).  In each of these bankruptcy cases, trustees have brought

adversary proceedings against Plaintiffs, seeking to set aside certain allegedly fraudulent and/or

preferential transfers of the debtors' property to Plaintiffs.[3]

In addition to the various matters pending in the Bankruptcy Court in Minnesota,

Plaintiffs have filed numerous other actions seeking to recover the losses they incurred through

their interactions with Petters.  *See, e.g.*, *Ritchie Capital Mgmt., L.L.C. v. JPMorgan Chase &

Co.*, No. 14 Civ. 2557 (LGS), 2014 WL 5810629, at *2 (S.D.N.Y. Nov. 10, 2014) ("*RCM

L.L.C.*") (denying plaintiffs' motion to remand and *sua sponte* transferring the action to the

United States District Court for the District of Minnesota); *Ritchie Capital Mgmt., L.L.C. v.

Costco Wholesale Corp.*, No. 14 Civ. 4819 (S.D.N.Y.) (Broderick, J.) (pending); *Ritchie Capital

Mgmt., L.L. C. v. Opportunity Fin., L.L.C.*, 511 B.R. 603 (D. Minn. 2014) (remanding case to

Minnesota state court on the basis of mandatory abstention despite a finding of "related to"

jurisdiction); *Ritchie Capital Mgmt., L.L.C. v. Fredrikson & Byron P.A.*, 980 F. Supp. 2d 1010

(N.D. Ill. 2013) (remanding case to Illinois state court based on lack of diversity); *Ritchie*

---

[3] The Trustee in the PCI bankruptcy case also has initiated an adversary proceeding against BMO Harris in the Minnesota bankruptcy court.  Notice of Removal ¶ 28.  According to Defendant, the claims in that case are similar to those brought here and seek recovery of the same sums that are sought by Plaintiffs here.  *Id.*  BMO Harris' motion to dismiss those claims is currently pending.  *Id.*

*Capital Mgmt., L.L.C. v. Jeffries,* 849 F. Supp. 2d 881 (D. Minn. 2012) (dismissing action

against former officers of Petters' companies as duplicative of bankruptcy proceedings); *Ritchie*

*Capital Mgmt., L.L.C. v. Coleman,* No. 12 Civ. 270 (ADM), 2012 WL 1901300, at *1 (D. Minn.

May 25, 2012) (dismissing case against Petters' former colleagues and law firm as duplicative of

bankruptcy proceedings).

## II.    Discussion

### A.  Motion to Remand[4]

"[A]ny civil action brought in a State court of which the district courts of the United

States have original jurisdiction, may be removed by the defendant or the defendants, to the

district court of the United States for the district and division embracing the place where such

action is pending."  28 U.S.C. § 1441(a).  The Second Circuit has made clear that federal courts

should construe this statute narrowly, resolving any doubts against removability, "[i]n light of

the congressional intent to restrict federal court jurisdiction, as well as the importance of

preserving the independence of state governments."  *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d

269, 274 (2d Cir. 1994) (citation omitted).  "'Due regard for the rightful independence of state

governments, which should actuate federal courts, requires that they scrupulously confine their

own jurisdiction to the precise limits which the statute has defined.'"  *Shamrock Oil & Gas Corp.*

*v. Sheets,* 313 U.S. 100, 109 (1941) (quoting *Healy v. Ratta,* 292 U.S. 263, 270 (1934)).

At all times the party seeking removal bears the burden of proving that the jurisdictional

and procedural requirements have been met.  *Burr v. Toyota Motor Credit Co.,* 478 F. Supp.2d

432, 436 (S.D.N.Y. 2006) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 296 (2d

---

[4] "When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand."  *Hart v. Bello*, No. 11 Civ. 67 (RMB), 2011 WL 1584577, at *2 (S.D.N.Y. Apr. 27, 2011) (quoting *Lothian Cassidy LLC v. Ransom,* 428 B.R. 555, 558 (E.D.N.Y. 2010)).

Cir. 2000)).  Such an approach is "warranted because removal 'abridges the deference courts generally give to a plaintiff's choice of forum.'"  *Groman v. Cola*, No. 07 Civ. 2635 (RPP), 2007 WL 3340922, at *3 (S.D.N.Y. Nov. 7, 2007) (quoting *Frontier Ins. Co. v. MTN Owner Trust*, 111 F. Supp. 2d 376, 378 (S.D.N.Y. 2000)).

Defendant asserts that federal jurisdiction is proper both under the Edge Act and because this action is "related to" pending proceedings in the United States Bankruptcy Court for the District of Minnesota.  Plaintiffs argue instead that any connection between their claims here and foreign banking activity or the bankruptcy proceedings "is far too attenuated" for federal subject matter jurisdiction on either claimed ground.  Pls. Mem. L. 1.

      1.   *The Edge Act*

The Edge Act, 12 U.S.C. § 632, was enacted in 1919 for the purpose of supporting U.S. foreign trade, in part by authorizing the establishment of international banking and financial corporations.  *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013) ("*AIG*").  The Act authorized the creation of banking corporations chartered by the Federal Reserve Bank which could engage in offshore banking operations "freed from regulatory barriers imposed by state banking commissioners that hindered other U.S. banks in efforts to compete with foreign banks."  *Id.* at 779.  Section 632 of the Act, which was added in 1933 as part of the Glass-Steagall Act, provided for federal court jurisdiction of certain suits to which Edge Act banks were parties, with the apparent purpose of affording those banks "predictable uniformity of adjudication supervised in the federal courts, and thus better protection against potentially divergent and conflicting strictures imposed by banking authorities of 48 states."  *Id.*

For an action to be removable under the Edge Act, it must:  (1) be a civil suit, (2) have a federally chartered corporation as a party, and (3) arise out of transactions involving international

or foreign banking, or out of international or foreign financial operations. *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (quoting *AIG*, 712 F.3d at 780-81).

The first two requirements for jurisdiction under the Edge Act are satisfied here:  the instant action is a civil suit and BMO Harris is a federally chartered bank. *See* Def. Opp. Mem. L. 9.  The parties disagree as to the third requirement:  whether the action arises out of transactions involving international or foreign banking, or out of international or foreign financial operations.  In *AIG*, the Second Circuit recently held that in order for the Edge Act's grant of federal jurisdiction to apply, "the suit must have a federally chartered corporation as a party, and the suit must arise out of an offshore banking or financial transaction *of that federally chartered corporation*."  712 F.3d at 784 (emphasis added).[5]  Accordingly, the question here is whether this action can be said to arise out of an international or foreign banking transaction involving BMO Harris.

In *RCM L.L.C.*, another court in this District recently found Edge Act jurisdiction to exist in a companion case involving allegations that Petters used JP Morgan Chase Bank ("JPMorgan Chase") accounts to launder money in furtherance of his frauds.  2014 WL 5810629, at *1.  In that case, the same six Ritchie plaintiffs alleged that in 2005, JPMorgan Chase sold its majority ownership of Polaroid Corporation to Petters and facilitated the sale, along with sixteen bank and financial institution defendants (the "Syndicated Lenders"), by loaning Petters a total of $375

---

[5] In *AIG*, plaintiff and its subsidiaries brought suit in state court against Bank of America, Merrill Lynch, and Countrywide affiliates in connection with 349 residential mortgage-backed securities ("RMBS") the plaintiffs had purchased. *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 820 F. Supp. 2d 555, 556 (S.D.N.Y. 2011).  The defendants removed the case to this District under both Section 1334(b) and the Edge Act. *Id.*  The defendants claimed that Edge Act jurisdiction was satisfied based on the fact that some of the properties underlying the loans were located in dependencies and insular possessions of the United States. *Id.*  However, there was no contention that Bank of America—the nationally-chartered defendant—was involved in any banking activities related to the offshore mortgages. *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, No. 11 Civ. 6212 (BSJ), 2011 WL 6778473, at *1 (S.D.N.Y. Dec. 20, 2011).  The Second Circuit held that it is not enough to allege (1) that a defendant is a nationally chartered bank, and (2) an international transaction; there has to be a connection between the two.  Accordingly, for Edge Act jurisdiction to apply, the action must arise out of an offshore banking or financial transaction involving the federally chartered party to the litigation. *AIG*, 712 F.3d at 777.

million the day after the sale closed. *Id.* Then, after Petters had difficulty repaying JPMorgan Chase and the Syndicated Lenders, JPMorgan Chase and a consulting company defendant allegedly fraudulently induced the plaintiffs to make a series of loans to Petters and his companies, ultimately totaling $189 million. *Id.* In particular, in February 2008, the plaintiffs transferred $31 million to PCI, which was then transferred numerous times through bank accounts of several shell entities associated with Petters, before being wired to JPMorgan Chase bank accounts in London, New York, and Chicago. *Id.* at *2. Later that month, the plaintiffs transferred an additional $16 million to PCI, which was then transferred through numerous accounts in the United States and abroad, before a portion of the money was used to repay a short-term loan made by JPMorgan Chase to Polaroid. *Id.* The court found that these activities—which involved JPMorgan Chase's opening of ten bank accounts in London for three Polaroid subsidiaries in the Netherlands—met the requirements for Edge Act jurisdiction.

Here, the foreign connection in BMO Harris' activities is arguably less apparent. For example, as Plaintiffs' counsel noted at the pre-motion conference: "there were never any wires in or out of the United States. Any and all wires that went to BMO Bank . . . went from New York or Chicago to the Minnesota bank." Tr. 2:17-20. However, even if that were the case, this action still arises out of BMO Harris' involvement in a foreign transaction. Plaintiffs claim that M&I actively assisted Petters in receiving the funds advanced by Cayman-based plaintiffs and transferring those monies to Petters' cohorts. Compl. ¶ 6. Specifically, in May 2008, M&I, PCI, and Plaintiff RCM Ltd.—which is based in the Cayman Islands—executed the deposit account control agreement, the purpose of which was to secure PCI's obligations to those Cayman-based plaintiffs. *Id.* ¶¶ 51-52. And each of the three causes of action brought in this case alleges that representations in the agreement, along with M&I's prior representations about the agreement

and the operation of the account, directly and proximately caused Plaintiffs' damages.  Notice of

Removal ¶ 22(c).  These allegations are sufficient to establish Edge Act jurisdiction.  *Compare*

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 792 (2d Cir. 1980)

(holding that federal jurisdiction was proper where the "traditional" banking activity was the

national bank's issuance of a letter of credit in New York defendant company's favor against

Venezuelan company's account even though that account was New York-based), *cert. denied*,

449 U.S. 1080 (1981); *Nacional Financiera, S.N.C. v. Chase Manhattan Bank, N.A.*, No. 00 Civ.

1571 (JSM), 2001 WL 327159, at *4 (S.D.N.Y. Apr. 4, 2001) (observing that even if one

federally chartered defendant had not engaged in a foreign banking transaction with a Mexican

construction corporation, the foreign banking requirement of the Edge Act was satisfied based on

a wire agreement between a Mexican bank and the other federally chartered defendant, even

though the wire transfer was executed domestically); *with Bayerische Landesbank v. HSBC*

*Holdings PLC*, No. 13 Civ. 3906 (AT), 2013 WL 6144762, at *2 (S.D.N.Y. Nov. 18, 2013)

(deciding that Edge Act jurisdiction could not be invoked where the federally chartered

corporation—HSBC Bank—was not a party to the sale to German-based plaintiff bank of a

certificate tied to an RMBS pool); *Dexia SA/NV v. Bear, Stearns & Co., Inc.*, 945 F. Supp. 2d

426, 429 (S.D.N.Y. 2013) (finding that Edge Act jurisdiction was not established where the

defendants relied solely on the origination of eighteen Virgin Islands mortgages to support

removal, and those loans were not originated by JPMorgan Chase Bank).  Plaintiffs' motion to

remand for lack of Edge Act jurisdiction is therefore DENIED.

     2.   *"Related to" Bankruptcy Jurisdiction*

     Federal subject matter jurisdiction also exists here based on 28 U.S.C. § 1334(b) because

that section gives district courts original but not exclusive jurisdiction of all civil proceedings

related to cases under Title 11. "It is well established that a civil proceeding is 'related to' a [T]itle 11 case if the outcome of the litigation 'might have any conceivable effect on the bankruptcy estate' or has 'any significant connection with the bankrupt estate.'" *RCM L.L.C.*, 2014 WL 5810629, at *5 (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)). "'Certainty, or even likelihood, is not required' to satisfy the 'conceivable effect' test; 'jurisdiction will exist so long as it is *possible* that the proceeding may affect the debtor's rights or the administration of the estate.'" *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, No. 13 Civ. 5349 (KBF), 2013 WL 5798986, at *4 (S.D.N.Y. Oct. 22, 2013) (quoting *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07 Civ. 4634 (GEL), 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007)); *see also In re Quigley Co.*, 676 F.3d 45, 53 (2d Cir. 2012) ("Bankruptcy jurisdiction is appropriate over 'third-party non-debtor claims that directly affect the *res* of the bankruptcy estate.'" (quoting *In re Johns-Manville Corp.*, 517 F.3d 52, 66 (2d Cir. 2008)), *cert. denied*, *Pfizer, Inc. v. Law Offices of Peter Angelos*, 133 S. Ct. 2849 (2013).

The standard for "related to" jurisdiction is plainly satisfied here. In *RCM L.L.C.*, the court found "related to" jurisdiction because any judgment the Ritchie plaintiffs could obtain would likely affect the funds that the bankruptcy trustees in the JPMorgan Chase adversary proceedings could recover. 2014 WL 5810629, at *6. In addition, the court noted the parties' agreement that many of the facts in that case were identical to those in the bankruptcy proceedings, including the Petters Ponzi scheme and JPMorgan Chase's alleged knowledge and assistance to the scheme. *Id.* Likewise here, both the Trustee in the bankruptcy proceedings and the Ritchie plaintiffs seek damages from BMO Harris based on the same conduct; accordingly, it is patently conceivable that Plaintiffs' success in this action will bear directly on PCI's bankruptcy estate. *Cf. Smartmatic USA Corp.*, 2013 WL 5798986, at *4 (observing that any

recovery by plaintiffs as creditors could reduce a recovery by the trustee in the bankruptcy

proceeding, and that effect—altering the amount of property available for distribution to the

creditors or the allocation of property among such creditors—is a typical manifestation of the

"conceivable effect" doctrine.  Moreover, the PCI Trustee's causes of action against BMO

Harris—aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and civil

conspiracy—are nearly identical to those brought here, and are premised, at least in part, on the

very same conduct.  *See, e.g.*, Notice of Removal, Ex. C (PCI Trustee Compl.) ¶ 91 ("M&I took

no steps to perform any of its obligations under the [Ritchie] Deposit Control Agreement[], even

though M&I considered the nature of the contemplated services to be special and

extraordinary.").[6]  Section 1334(b) therefore provides an independent basis for jurisdiction.

        3.   *Abstention*

        Plaintiffs also contend that the Court should abstain from exercising jurisdiction here.

However, Plaintiffs' arguments in favor of abstention are unavailing.  First, mandatory

abstention cannot apply here because federal subject matter jurisdiction exists based on both the

Edge Act and Section 1334(b).  See *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496

B.R. 706, 711 (S.D.N.Y. 2013) (noting the six requirements for mandatory abstention, including

that Section 1334 provides the sole basis for federal jurisdiction); *cf. RCM L.L.C.*, 2014 WL

5810629, at *7 (finding mandatory abstention inapplicable because the Edge Act provided an

---

[6] Plaintiffs argue that "related to" jurisdiction cannot exist based on BMO Harris' defense in the bankruptcy
proceedings that the Trustee lacks standing to prosecute its claims under the doctrine of *in pari delicto*.  *See* Pls.
Mem. L. 12 ("Because the BMO Adversary Proceeding is legally deficient – as BMO recognized and has argued
before that court – BMO's argument that 'related to' jurisdiction exists based on that 'similar action' should be
rejected.").  However, as the Court noted at the pre-motion conference in this case, BMO Harris' positions here and
in the proceedings before the bankruptcy court are not necessarily contradictory.  Tr. 8:16; *see also RCM L.L.C.*,
2014 WL 5810629, at *6 (rejecting Ritchie plaintiffs' argument against remand on basis of JPMorgan Chase's
challenge to the bankruptcy proceedings as meritless because "[d]istrict courts have 'related to' jurisdiction over 'all
civil proceedings . . . related to cases under [T]itle 11,' regardless of the merits of the cases." (quoting 28 U.S.C. §
1334(b))).

independent jurisdictional basis).  And Plaintiffs' arguments in support of equitable or permissive abstention are unpersuasive.  Courts in this Circuit have observed that the principles developed under the judicial abstention doctrines provide federal courts with "a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' and may abstain only for a few 'extraordinary and narrow exception[s].'"  *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)).  Those circumstances clearly are not present in this case.

As addressed above, the Court finds that this matter does have an effect on the administration of Petters' bankruptcy estate.  *See* Pls. Mem. L. 22.  Just as the court found in *RCM L.L.C.*, the instant action is closely tied to the bankruptcy proceedings in Minnesota.  2014 WL 5810629, at *7.  And as in that case, the state law claims brought here—aiding and abetting, fraud and misrepresentation, and civil conspiracy—are by no means "novel or unsettled."  *Id.* Even if they were, however, the fact that these claims are—unlike those in *RCM L.L.C.*— brought under Minnesota law would counsel against remand to a New York state court.  *See* Compl., Ex. B (RCM, Ltd. Deposit Account Control Agreement) § 14 ("This Agreement shall be governed by, and construed in accordance with, the internal laws . . . of the State of Minnesota"). Accordingly, the Court will not abstain from hearing this case under either permissive or equitable abstention principles.

### B.  Motion to Transfer

Defendant moves to transfer the case to the District of Minnesota under 28 U.S.C. § 1404(a), which provides that a district court may transfer any case to "[a] district . . . where it might have [originally] been brought," considering "the convenience of parties and witnesses, in the interest of justice."  Defendant also moves to transfer under 28 U.S.C. § 1412, which

provides that a district court may transfer a case or proceeding under Title 11 to a district court for another district.

Defendant argues that this action should be transferred to the United States District Court for the District of Minnesota because it relates directly to Minnesota proceedings arising from the same facts, transactions, and agreements at issue here, including extensive bankruptcy litigation impacting Plaintiffs' claims and BMO Harris' defenses.  Def. Mem. L. 1.  Moreover, according to Defendant, Minnesota—not New York—is the central locus of operative facts, the location of most witnesses, and the relevant source of law governing Plaintiffs' claims in this action.  *Id.*

Under 28 U.S.C. § 1404(a), a district court may, "for the convenience of parties and witnesses, in the interest of justice," transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.  "The purpose of this provision is to 'prevent waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Tillery v. NYS Office of Alcoholism & Substance Abuse Servs.*, No. 13 Civ. 0035 (CM), 2013 WL 6405326, at *3 (S.D.N.Y. Dec. 5, 2013) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 372 (S.D.N.Y. 2006)).  "The statute gives the district court wide discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  In order to prevail on a motion to transfer, the moving party must establish by clear and convincing evidence that:  (1) the action is one that "might have been brought" in the district to which the movant seeks to have it transferred, and (2) transfer is appropriate based on the convenience of the parties, the convenience of witnesses, and the interests of justice.  *Id.*

Courts in this Circuit consider a number of factors on a motion to transfer venue including:

> (1) the plaintiff's choice of forum, (2) the convenience to witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties to the suit, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, (9) trial efficiency, and (10) the interest of justice, based on the totality of the circumstances.

*Id.* (quoting *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012)).

In *RCM L.L.C.*, the court transferred the case *sua sponte* to the District of Minnesota based on the convenience of the parties and witnesses and the Minnesota court's familiarity with the underlying Petters disputes.  2014 WL 5810629, at *9.  The case for transfer is even more compelling here.  First, the defendant in this action—unlike JPMorgan Chase, which is headquartered in New York—is a Midwest-based banking corporation headquartered in Chicago.  *See* Tr. 24:10-11.  And M&I, a Wisconsin banking corporation that maintained an office in Minnesota, was also based in the Midwest.  Compl. ¶ 10.  Second, whereas the District of Minnesota's presumed lack of familiarity with New York law was a countervailing consideration for the court in *RCM L.L.C.*, the fact that this litigation will instead involve Minnesota law counsels in favor of transfer.  Even if these additional considerations were not present, however, the Court would still find that transfer to the District of Minnesota was warranted for the same reasons as in *RCM L.L.C.*  This case revolves around a Minnesota fraud and the related bankruptcy proceedings; the locus of this case is Minnesota, and the parties and witnesses are, for the most part, Midwest-based.[7]  *Cf. Smartmatic USA Corp.*, 2013 WL 5798986, at *5

---

[7] Despite this action's strong ties to the Midwest, Plaintiffs challenge that BMO Harris has not demonstrated that the convenience of the witnesses favors the Minnesota forum.  According to Plaintiffs, Defendant failed to specifically

(transferring case to the United States District Court for the District of Colorado—where the related bankruptcy case was pending—because it would be a waste of resources for both the parties and the judiciary to have the same issues litigated in both Colorado and New York courts). Indeed, Plaintiffs' choice of forum appears to be the only factor that weighs against transfer here. Plaintiffs do not argue, however, that they are without means to litigate the case in Minnesota. Defendant's motion to transfer the case to the District of Minnesota is therefore GRANTED.

## III.   Conclusion

For the reasons set forth above, Plaintiffs' motion to remand is DENIED and Defendant's motion to transfer the case to the United States District Court for the District of Minnesota is GRANTED. The Clerk of the Court is directed to terminate the motions, Doc. 21, 24, 25, and transfer the case.


It is SO ORDERED.

Dated:     March 30, 2015
           New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.

---

identify the witnesses located in the District of Minnesota upon whom it intends to rely, which according to Plaintiffs, is fatal to Defendant's reliance on this factor. Pls. Opp. Mem. L. 8. However, a specific showing is required only when the movant seeks a transfer *solely* on account of the convenience of the witnesses. *Mohsen v. Morgan Stanley & Co. Inc.*, No. 11 Civ. 6751 (PGG), 2013 WL 5312525, at *8 n.7 (S.D.N.Y. Sept. 23, 2013) (internal citations omitted). That is not the case here.